IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, | : | |
| SALES PRACTICES AND PRODUCTS LIABILITY | : | |
| LITIGATION | : | MDL No. 2284 |
| | : | 11-md- 2284 |
| _____ | : | |
| | : | |
| THIS DOCUMENT APPLIES TO: | : | |
| *Richard and Donna Corker v. E.I. du Pont de Nemours* | : | 15-cv-4003 |
| *and Company* | : | |
| | : | |

## MEMORANDUM

PRATTER, J.                                                      SEPTEMBER 18, 2015

Defendant DuPont has filed a motion to dismiss claims brought by Plaintiffs Richard and

Donna Corker.  DuPont claims that these Plaintiffs failed to opt out of the Settlement but

continue to pursue a lawsuit against DuPont, in contravention of the Settlement Agreement in

this matter.  The Corkers respond that the notice program was unconstitutional as applied to them

and that DuPont should be estopped from enforcing the Settlement Agreement against them

because DuPont, in encouraging them to fill out an application for a warranty claim, lulled them

into thinking that they would receive compensation through the Settlement and did not need to

hire counsel to pursue any legal remedies.  After considering the parties' written submissions, the

Court will grant DuPont's motion.

BACKGROUND

Because the Court has written about the history of this litigation in several opinions, the

following summary will be brief.

In the fall of 2010, DuPont introduced Imprelis, a new herbicide designed to selectively

kill unwanted weeds without harming non-target vegetation.  After widespread reports of

1

damage to non-target vegetation, the EPA began investigating Imprelis, leading to lawsuits, a

suspension of Imprelis sales, and an EPA order preventing DuPont from selling Imprelis.  In

September 2011, DuPont started its own Claim Resolution Process to compensate victims of

Imprelis damage.  Despite this voluntary process, Plaintiffs continued to pursue their lawsuits,

alleging consumer fraud/protection act violations, breach of express and/or implied warranty,

negligence, strict products liability, nuisance, and trespass claims based on the laws of numerous

states.  After months of settlement discussions, including mediation, the parties came to a

settlement agreement.  The details of the settlement relevant to the instant motions will be

discussed in greater detail below.

### A.  The Settlement

The Imprelis Class Action Settlement covers three classes of Imprelis Plaintiffs.  Among

the three settlement classes is a property owner class, to which, DuPont argues, the Corkers

belong.  That class includes all persons or entities who own or owned property in the United

States to which Imprelis was applied (or adjacent to property to which Imprelis was applied)

from August 31, 2010 through August 21, 2011.  Under the Settlement, property owner class

members who filed claims by the claims deadline would receive tree removal (or compensation

for tree removal), payments for replacement trees, tree care and maintenance payments, and a

15% payment for incidental damages.  The Settlement included a warranty that provided for all

benefits but the 15% incidental damages award for Imprelis damage that manifested after the

claims period closed but before May 31, 2015.  On February 12, 2013, this Court preliminarily

approved the Settlement, and specifically ordered that:

> Any Settlement Class Member may opt out of the Settlement by following the
> "Exclusion" procedure set forth in the Long Form Notice and the Settlement
> Agreement.  All Settlement Class Members who do not opt out in accordance with
> the terms set forth in the Settlement Notice and the Settlement Agreement will be

2

bound by all determinations and judgments in the Action. Any Class Member who wishes to opt out of the Class must do so in writing by mailing a request for exclusion to the Claims Administrator. Any such request must be postmarked no later than the Opt-Out Deadline, June 28, 2013. The request to opt out must be signed by the Class Member seeking to opt out and must set out the Class Member's first and last names (or company name), valid mailing address and functioning telephone number.

February 12, 2013 Order, Docket No. 160, ¶ 8. The Settlement itself provided that DuPont could terminate the agreement if "in its sole discretion, DuPont believe[d] that the number of Opt-Outs was unsatisfactory." *See* Settlement Agreement and Release, Docket No. 118-1, § IX.A.

On September 27, 2013, the Court held a Final Fairness Hearing to determine whether the Settlement provided fair, reasonable, and adequate compensation to class members. At the hearing, counsel for Class Plaintiffs, supported by DuPont, stated that any potential class members who expressed an intention to opt out should have their intention honored. *See* Sept. 27, 2013 Tr., 11:17-24 ("Mr. Selbin: Our view – and I think it's shared by DuPont, is that if someone tries to opt out, that attempt should be honored, if they expressed a desire not to be bound by the settlement. And I believe that's DuPont's view, as well. Mr. Hoeflich [on behalf of DuPont]: That is correct, Your Honor."). The Court also heard from a handful of objectors, including Objector Ray Majcher, who offered a presentation focused largely on his concern that Imprelis would harm his heavily wooded property long after the warranty expires. In granting final approval, the Court specifically addressed Mr. Majcher's objections and observed that the warranty, which was among the most hotly contested issues involved in the settlement negotiations, was supported by Plaintiffs' experts, who opined that a warranty of the length agreed upon under the Settlement would be sufficient to cover all Imprelis-related damage. *In re Imprelis Herbicide Mktg., Sales Practices, & Prods. Liab. Litig. (Imprelis-Final Approval),* 296 F.R.D. 351, 366-67 (E.D. Pa. 2013).

On October 17, 2013, the Court granted the Class Plaintiffs' Motion for Final Approval of the Settlement.  In so doing, the Court found that the notice program, which included direct mail to all identified class members (those who had submitted claims to DuPont), as well as publication in print,[1] online,[2] and on television,[3] was "comprehensive" and the "best notice practicable under the circumstances."  *Id.* at 363.

The Order entering final judgment as to the Settlement states that class members are "permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims, against any Releasee . . . by whatever means, in any local, state, or federal court, or in any agency or other arbitral or other forum . . . ."  February 5, 2014 Order, Docket No. 274, ¶ 7.  The Court also retained exclusive jurisdiction over any action relating to the Settlement:

> Without affecting the finality of this Order, the Court shall retain jurisdiction over the implementation, enforcement, and performance of the Settlement Agreement, and shall have exclusive jurisdiction over any suit, action, motion, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and DuPont.

*Id.* at ¶ 11.  Attached to that Order was a list of all parties who had opted out of the Settlement. The Corkers are not listed in that attachment.  *See id.* at Ex. A.

### B.    The Corkers

Richard and Donna Corker reside in Saline, Michigan.  According to their Complaint, Imprelis was applied to a property adjacent to theirs, and this application resulted in damage to

---

[1]    The print advertisements appeared in widely circulated publications like *Parade*, *People*, *Better Homes and Gardens*, *Time*, and others geared toward adults age 35 and over.

[2]    Online advertisements appeared on AOL, Facebook, Yahoo!, Google, and other sites.

[3]    Commercials appeared at a variety of times of day in 46 targeted Market Areas throughout the United States.

4

trees on their own property. They claim that they did not learn of the Settlement until after the opt-out period ended, and that as soon as they did learn of the Settlement, they promptly contacted DuPont on November 7, 2013 to inquire about filing a claim. In response to their letter, DuPont provided a Warranty Inspection Request Form, and after the Corkers filled out two such forms, DuPont informed them that they did not meet the requirements for a warranty claim.

On June 3, 2015, the Corkers filed a complaint in Washtenaw County Circuit Court in Ann Arbor, Michigan, asserting several claims against DuPont. DuPont removed the case to federal court, and the case was then transferred to the Imprelis Multidistrict Litigation pending before this Court. DuPont then moved to dismiss, claiming that because the Corkers did not opt out of the Settlement, their claims are barred by the Settlement Agreement. The Corkers assert that (1) they did not receive constitutionally adequate notice of the Settlement and (2) DuPont should be estopped from using the Settlement to bar their claims because DuPont misled them when it sent them a letter attaching a warranty claim form.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.*

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough

to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is

not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to

cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation

and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a

context-dependent exercise" because "[s]ome claims require more factual explication than others

to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85,

98 (3d Cir. 2010).

## DISCUSSION

### A. Notice

The Corkers claim that DuPont had "actual knowledge that Plaintiff's neighborhood had

been sprayed with Imprelis and this imposed on them a duty to – at a minimum – notify all

residents of said neighborhood via USPS first class mail." Pls.' Opp. at 4, Docket No. 482. The

Corkers appear to be arguing that once DuPont learned about the claims of property owners to

whose property Imprelis had been directly applied, DuPont had a duty to determine whether

those owners had neighbors who could possibly be affected by Imprelis, to identify those

neighboring property owners, and to directly reach out to them. The Corkers cite no case law

directly on point.

This Court has addressed similar arguments in this matter in the context of motions to

dismiss and motions to enjoin state court litigation. *See, e.g.,* December 5, 2014 Memorandum

and Order (Docket Nos. 347, 348) (enjoining two state cases and dismissing one federal suit

when plaintiffs pursued litigation after failing to opt out of class action); June 18, 2015

Memorandum and Order (Docket Nos. 452, 453) (enjoining state court action when plaintiffs

failed to opt out of class action settlement). In particular, the Corkers argument that adjacent property owners were ascertainable and deserved direct notice resembles the argument made by the Holmes Plaintiffs, who argued that DuPont should have obtained customer lists from lawn care companies and provided direct notice based on those lists. The Court rejected the Holmes's argument, and will similarly reject the Corkers' argument. *See* June 18, 2015 Memorandum and Order (Docket Nos. 452, 453). In brief, the Court has already thoroughly examined and approved of the Class Action Settlement, including, as discussed above, the notice provisions, and the Corkers may not now challenge those issues that have already been litigated. *See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 431 F.3d 141, 146 (3d Cir. 2005).

### B. Estoppel

The Corkers also argue that DuPont misled them when, in response to their letter of November 7, 2013, DuPont responded by inviting the Corkers to file a warranty claim. The Corkers claim that DuPont knew all along that their warranty claim would be denied and that they were prejudiced because DuPont's actions caused them to cease efforts to retain counsel for possible litigation against DuPont.

Someone trying to invoke the principles of equitable estoppel must demonstrate "(1) a misrepresentation by another party; (2) which [s]he reasonably relied upon; (3) to [her] detriment." *Leese v. Adelphoi Village, Inc.*, 516 Fed. Appx. 192, 194 (3rd Cir. 2013) (internal citation omitted). The Corkers have failed to satisfy these elements. First, the Corkers have not demonstrated how DuPont misled them. Under the Settlement, property owners who experienced Imprelis damage after the claims deadline but before May 31, 2015 were entitled to make a warranty claim. *See* Settlement Agreement and Release, Docket No. 118-1, III.C.ix;

Docket No. 117, Ex. 24 (Ex. 21 to Settlement Agreement). DuPont's letter, which invited the Corkers to do just that, did not promise that any warranty claim they filed would be successful, and the Corkers have not presented any evidence or even factual allegations that suggest that DuPont had already prejudged their claim when it sent that letter.

Even if DuPont's letter was in some way misleading, the Corkers have not demonstrated that they reasonably relied upon the letter to their detriment. The letter the Corkers initially sent to DuPont was dated November 7, 2013, already well after the claims deadline for non-warranty claims and the opt-out deadline had passed. No matter how DuPont responded to the Corker's letter, the fact remains that by the time the Corkers attempted to assert a settlement claim, it was too late for the Corkers to do anything that might have led to their entitlement to recovery, such as file a timely non-warranty claim or opt out of the Settlement. Therefore, even a misleading response from DuPont could not have prejudiced the Corkers, and the doctrine of equitable estoppel does not apply. [4]

---

[4] The Court recently addressed the failure of plaintiffs to opt out of a settlement in another MDL action. *See Kraft Foods Global, Inc. v. Cal-Maine Foods, Inc., et al.*, Civil Action No. 12-cv-0088, September 14, 2015 Memorandum, Docket No. 65. In that case, the Court found that the *Kraft* plaintiffs' failure to timely opt out of the settlement was due to excusable neglect and allowed the plaintiffs to opt out of the settlement after the deadline to do so had passed. *Id.* at 10-16. As in this case, the Court found that the notice program in *Kraft* comported with due process. As for excusable neglect, the key to the *Kraft* plaintiffs' argument in favor of allowing a late opt out, even if the Corkers had actually raised the issue of excusable neglect, the facts of this case, and the circumstances of the Imprelis litigation generally, are clearly distinguishable from the facts of the *Kraft* case and the circumstances of the Processed Egg Products Antitrust Litigation, as is evident from the Court's analysis in the *Kraft* opinion. *See id.* at 11-12 (distinguishing *Kraft* from *In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, No. 11-MD- 2284, 2014 WL 348593, at *3 (E.D. Pa. Oct. 23, 2009)).

CONCLUSION

For the foregoing reasons, the Court will grant DuPont's motion.  An appropriate Order

follows.

BY THE COURT:

GENE E.K. PRATTER
United States District Judge

9